IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DON L. JEFFERSON,

        Plaintiff,                    No. CIV S-08-1747 WBS EFB P

    vs.

L. FLOHR, et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Plaintiff proceeds on his October 16, 2009 amended complaint, wherein he alleges, in relevant part, that defendants Flohr, Harris, and Stocker ("defendants") were deliberately indifferent to his serious medical needs by denying him Buproprion to treat his depression.[1] On February 5, 2010, defendants filed a motion for summary judgment on the grounds that they were not deliberately indifferent to plaintiff's medical condition and that they are entitled to qualified immunity.[2] For the reasons explained below, the court recommends that

---

[1] This action also proceeds against defendant Swanson. *See* Dckt. No. 28.

[2] Defendants also argue that plaintiff's claim for injunctive relief is moot. The court need not address this argument as plaintiff did not request injunctive relief in his October 16, 2009 amended complaint. *See* Dckt. No. 22.

1

defendants' motion be granted.

## I.    Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.  "When reasonable minds could differ on the material facts at issue, summary judgment is not appropriate." *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting the prior language of Rule 56(c), which was amended in 2007 to implement purely stylistic changes).  If the moving party meets its initial responsibility, the opposing party must "set out specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must demonstrate – through evidence in the form of affidavits and/or admissible discovery material – a factual dispute that is both material (i.e. it affects the outcome of the claim under the governing law) and genuine (i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party).  Fed. R.

Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 248-50; *Matsushita*, 475 U.S. at 586 n.11.  Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 322.  Thus, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323.

In resolving a summary judgment motion, the court examines the pleadings, the discovery and disclosure materials on file, and any affidavits filed by the parties.  Fed. R. Civ. P. 56(c)(2).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in his or her favor.  *Anderson*, 477 U.S. at 255*; Matsushita*, 475 U.S. at 587.  Nevertheless, it is the opposing party's obligation to produce a factual predicate from which a favorable inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

On April 15, 2009 and March 18, 2010, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 955-60 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999) (holding that either the district court or the moving party must inform a pro se prisoner of the requirements of Rule 56), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

**II.    Undisputed Facts**

The following facts are not disputed by either party or following the court's review of the evidence submitted, have been deemed undisputed.

In approximately 2001, plaintiff began taking Wellbutrin. Defs.' Mot. for Summ. J. ("Defs.' MSJ"), Stmt. of Undisp. Facts in Supp. Thereof ("Defs.' SUF") 11; Pl.'s Opp'n to Defs.' MSJ ("Pl.'s Opp'n"), Stmt. of Undisp. Facts in Supp. Thereof ("Pl.'s SUF") 6. Before plaintiff started taking Wellbutrin, he tried several other antidepressants. Defs.' SUF 12; Pl.'s SUF 7.

Plaintiff was incarcerated on June 27, 2006. Defs.' SUF 13. On August 22, 2006, plaintiff was transferred to Folsom State Prison (Folsom). Defs.' SUF 16. In June 2007, plaintiff's prescription was changed from Wellbutrin to Buproprion. Defs.' SUF 17. Buproprion is a generic form of Wellbutrin. Defs.' SUF 14; Pl.'s SUF 12. Initially, plaintiff experienced a dry mouth, a bad taste in his mouth, and fluctuations in his mood. Defs.' SUF 16, 17. Based upon these side effects, plaintiff refused to accept Buproprion. Defs.' SUF 17; Pl.'s SUF 9. During this time, plaintiff submitted a grievance, with log number 07-0694, that claimed his prescription for Buproprion needed to be changed to Wellbutrin. Defs.' SUF 18; Pl.'s SUF 9.

As the appeals coordinator at Folsom, defendant Stocker is responsible for reviewing inmate grievances regarding the medical care at Folsom and staff responses to those grievances. Defs.' SUF 6, 9. On August 26, 2007, Stocker conducted the first level review of grievance 07-0694. Defs.' SUF 19. Stocker granted plaintiff's grievance because plaintiff's medical records indicated that Flohr had prescribed him Wellbutrin. Defs.' MSJ, Ex. E at 5. At the second level of review, however, the grievance was denied on the ground that the chemical makeup of Buproprion and Wellbutrin are the same.[3] Defs.' SUF 20; Pl.'s SUF 14.

////

---

[3] This appeal was subsequently denied at the Director's Level of review on the ground that plaintiff was receiving the medication he requested, albeit, in the generic form. Defs.' MSJ, Ex. E at 8. In denying plaintiff's request for brand name medication, the Director's Level concluded that no changes to the current, generic prescription, were required. *See id*; Pl.'s SUF 26. Plaintiff, both in his complaint and in his opposition, mischaracterizes this conclusion as an order indefinitely prohibiting his doctors from making any changes to his Buproprion prescription. *See* Dckt. No. 22, § IV; Pl.'s SUF 15, 16; Pl.'s Opp'n, Mem. of P. & A. in Supp. Thereof ("Pl.'s P. & A.") at 9 .

4

Because plaintiff believed the symptoms of his condition were worse than the side effects of Buproprion, plaintiff started taking Buproprion again. Defs.' SUF 17. After about a month, plaintiff's side effects subsided, and plaintiff believed the Buproprion was starting to work for him. *Id.*

There are safety issues associated with prescribing Buproprion and Wellbutrin to inmates. Defs.' SUF 21. For example, Buproprion and Wellbutrin are not appropriate for inmates with a history of drug abuse. *Id.* Seizures are a potential side effect of Buproprion and Wellbutrin, and the likelihood of a seizure is much greater if a patient consumes alcohol. *Id.* Many inmates have a history of drug and alcohol abuse. Defs.' SUF 22. While prisons take extensive measures to prevent inmates from obtaining illegal drugs and alcohol, prisoners manage to smuggle drugs into prisons and make alcohol from leftover food. *Id.* In addition, some inmates misuse and barter prescribed medications. *Id.*

Andrew Swanson, M.D., is the Chief Psychiatrist for California Department of Corrections and Rehabilitation (CDCR) Healthcare Services. Defs.' SUF 23. On October 16, 2007, Swanson issued a new policy for all CDCR prisons regarding all formulations of Wellbutrin, including Buproprion. Defs.' SUF 24; Pl.'s SUF 17. To prevent abuse, CDCR increased the requirements for inmates to be eligible for a prescription of Wellbutrin or Buproprion. Defs.' SUF 24. In order to receive Wellbutrin or Buproprion: (1) the inmate must have a major depressive disorder which interferes with his ability to function or program; (2) the inmate must have tried three other antidepressant medications without success, and the prison must have blood tests to confirm compliance with the clinical trial; and (3) the inmate cannot have any history of medication misuse or hoarding and no documented history of illegal drugs for at least two years. *Id.*

All inmates on Buproprion or Wellbutrin, who did not meet the above criteria, were no longer eligible for the medication. *Id.* Inmates approved to continue with Wellbutrin were no longer permitted to receive a thirty day supply of pills. *Id.* Instead, all formulations of

Wellbutrin must be ordered crushed and added to fluid. *Id.* Under the new policy, plaintiff was not eligible to receive Buprorion or Wellbutrin until he tried three other antidepressant medications. Defs.' SUF 27.

On January 14, 2008, defendant Flohr, a psychiatrist at Folsom, met with plaintiff to discuss Swanson's memo. Defs.' SUF 3, 26. Flohr advised plaintiff that: (1) he was no longer eligible to receive either Buprorion or Wellbutrin;[4] (2) his prescription for Buprorion would end on February 5, 2008; and (3) he should start on another antidepressant medication that was appropriate for his medical condition. Defs.' SUF 28. Flohr suggested several other antidepressant medications that were appropriate for plaintiff's medical condition, and plaintiff refused all of them. Defs.' Mot. for Summ. J., Ex. A ¶¶ 7-9; Ex. H at 114:20-23. Between January 14 and July 2008, plaintiff met with Flohr at least four times. Defs.' MSJ, Ex. A, ¶ 9; Ex. D at 1, 3. Each time they met, Flohr offered plaintiff antidepressant medications other than Buprorion and Wellbutrin that were appropriate for plaintiff's medical condition, but plaintiff always refused them. Defs.' SUF 31. All of the treatment and medications prescribed by Flohr were reasonable and appropriate courses of treatment based upon plaintiff's medical condition. Defs.' SUF 37-38.

On February 5, 2008, plaintiff's prescription for Buprorion expired. Defs.' SUF 32. Defendant Harris, a pharmacist at Folsom responsible for filling inmates' prescriptions for medications, did not fill any prescriptions for plaintiff for Buprorion after February 5, 2008, because plaintiff did not have a prescription for Buprorion. Defs.' SUF 5, 52, 57. Except for determining whether a prescription was outside the recommended dosage or could interact with other prescribed medications, Harris is not responsible for determining whether a medication is appropriate for an inmate. Defs.' SUF 52. Harris is not authorized to prescribe medication or

---

[4] Plaintiff claims there is a dispute as to whether he was eligible to receive Buprorion or Wellbutrin. Pl.'s P. & A at 3; Pl.'s SUF 18. However, there is no evidence in the record to support plaintiff's assertion.

medical treatment. Defs.' SUF 53.  When plaintiff had a prescription for Buproprion, Harris properly filled plaintiff's prescriptions.  Defs.' SUF 56.  Other than filling his prescriptions at Folsom, Harris played no role in plaintiff's medical care.  Defs.' SUF 59.  At no time did Harris intentionally or knowingly cause plaintiff any pain, suffering, injury or harm.  Defs.' SUF 60.  Harris is not aware of anyone who refused to provide medical care or treatment to plaintiff.  Defs.' SUF 61.  Harris played no role in the creation or implementation of the CDCR policy regarding Wellbutrin or Buproprion.  Defs.' SUF 58.

On approximately February 7, 2008, plaintiff submitted grievance number 08-0408, complaining that he had "been refused a medication refill . . . even though a Director's Level Decision [] granted [his] prescription . . . ."  Pl.'s Opp'n, Ex C; Pl.'s SUF 21; Defs.' SUF 40, 44. With this grievance, plaintiff attached the Director's Level review of grievance 07-0694, apparently based upon his belief that the Director's Level conclusion required that plaintiff be prescribed Buproprion.  *See* Pl.'s Opp'n, Ex. C; Defs.' SUF 46.  Based upon her review of these documents, Stocker believed that: (1) plaintiff filed grievance 07-0694 because he was unwilling to accept Buproprion; (2) prison officials determined the chemical makeup between Wellbutrin and Buproprion were the same; (3) plaintiff was eligible to receive Buproprion; and (4) grievance 08-0408 merely clarified that plaintiff was willing to accept Buproprion.  Defs.' SUF 46.  Stocker did not believe there were any issues in grievance 08-0408 that were not addressed by grievance 07-0694.  *Id.*  Stocker was not aware that plaintiff was no longer eligible to receive Buproprion, and Stocker did not believe grievance 08-0408 concerned plaintiff's ability to receive Buproprion.  *Id.*  Accordingly, Stocker rejected grievance 08-0408.  Defs.' SUF 45.

Stocker is not responsible or qualified to evaluate the quality of the medical care provided to inmates.  Defs.' SUF 7.  When she reviews an inmate's grievance, Stocker is responsible for determining whether it should be accepted for review or "screened out" due to the inmate's failure to comply with Title 15 of the California Code of Regulations.  Defs.' MSJ, Ex. B, ¶ 3.  If the grievance is accepted for review, Stocker forwards the grievance to a staff

member capable of addressing the inmate's complaints. *Id.* When she reviews a staff member's response, Stocker assesses only whether the inmate's allegations were addressed by the staff member. *Id.* Stocker is not a doctor and she cannot prescribe any medication or treatment. Defs.' SUF 8. Stocker played no role in plaintiff's medical care. Defs.' SUF 49. At no time did Stocker intentionally or knowingly cause plaintiff any pain, suffering, injury or harm. Defs.' SUF 50. Stocker is not aware of anyone who refused to provide medical care or treatment to plaintiff. Defs.' SUF 51.

### III.     Legal Standard for Eighth Amendment Claim

To state a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992). A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of

serious harm." *Id.* at 842. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.* However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). It is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

**IV.     Analysis**

Plaintiff claims that as of February 5, 2008, defendants were deliberately indifferent to his medical needs by denying him Buproprion. Defs.' SUF 32; *see also* Dckt. No. 22, § IV. Defendants argue they were not deliberately indifferent to plaintiff's medical needs. Specifically, defendants contend: 1) Flohr prescribed plaintiff medication that was appropriate for his medical condition, and plaintiff always refused all of the medications that Flohr offered; 2) Harris played no role in determining whether plaintiff should be prescribed Buproprion; and 3) plaintiff's claim that Stocker reviewed a grievance regarding Flohr's treatment is not actionable. Defs.'MSJ, Mem. of P. & A. in Supp. Thereof ("Defs.' P. & A.") at 10-11.

   **A.**  **Defendant Flohr**

In his opposition, plaintiff explains that he has tried numerous antidepressants over the years and experienced painful and harmful side effects as a result. Pl.'s P. & A. at 14. Plaintiff is therefore reluctant to try a new antidepressant after finally finding one that works for him. *Id.* at 9, 14. Plaintiff also argues that antidepressants are experimental medications and not even

9

medical professionals can tell which antidepressant is appropriate for a particular individual. *Id.* at 3. Plaintiff does not, however, support this assertion with any evidence.

Plaintiff's claim against Flohr amounts to a mere difference of opinion as to which antidepressant medication plaintiff should be taking. It is undisputed that Flohr offered plaintiff several antidepressant medications, other than Wellbutrin and Buproprion, which were appropriate for plaintiff's medical condition. Defs.' SUF 31. It is also undisputed that plaintiff always refused the medications that Flohr offered him, because plaintiff only wanted a prescription for Buproprion. *Id.* Therefore, plaintiff was not denied appropriate medication, he was merely denied the medication of his choice. As defendants argue, plaintiff's disagreement with prison medical authorities about his need for a particular medical treatment cannot give rise to a section 1983 claim. *See* Defs.' P. & A. at 10 (citing *Franklin*, 622 F.2d at 1344). Plaintiff fails to provide any evidence suggesting that the alternative medications offered by Flohr were medically unacceptable. Nor is there any evidence to support the contention that Flohr was deliberately indifferent to plaintiff's medical needs. Accordingly, Flohr is entitled to summary judgment.

### B.   Defendant Harris

The undisputed facts establish that after February 5, 2008, plaintiff did not have a prescription for an antidepressant because plaintiff refused all of those offered to him. Defs.' SUF 31, 32, 57. It is also undisputed that without a prescription, Harris could not provide plaintiff with any medications. Defs.' SUF 52, 53. In his opposition, plaintiff suggests that Harris was involved in implementing the policy regarding Wellbutrin. Pl.'s P. & A. at 11. However, defendants' evidence that Harris played no role in the creation or implementation of the CDCR policy regarding Wellbutrin or Buproprion, is undisputed. Defs.' SUF 58. As Harris played no role in choosing plaintiff's medications, and could not provide plaintiff with Buproprion absent a prescription, Harris is entitled to summary judgment.

////

10

### C.  Defendant Stocker

In his opposition, plaintiff contends that Stocker should have forwarded grievance 08-0408 to the Chief Medical Officer, and by not doing so, she was deliberately indifferent to his medical needs.  Pl.'s P. & A. at 3, 12.  Any claim based on the manner in which Stocker processed plaintiff's inmate grievances is not actionable because there are no constitutional requirements regarding how a grievance system is operated.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that prisoner's claimed loss of a liberty interest in the processing of his appeals does not violate due process because prisoners lack a separate constitutional entitlement to a specific prison grievance system).  Moreover, there is no evidence suggesting that Stocker was deliberately indifferent to plaintiff's medical needs.  Consequently, Stocker is entitled to summary judgment.

### V.  Conclusion

Summary judgment is appropriate because there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law.  Therefore, the court need not address defendants' argument regarding qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' February 5, 2010, motion for summary judgment be granted and that this action proceed against defendant Swanson only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

////

////

////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 16, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE